WILBERT BEARD, Plaintiff-Appellant, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF CAIRO et al., Defendants-Appellees.

(No. 73-76;

Fifth District—August 8, 1974.

Robert L. Lansden, of Cairo (Larry Ruemmler, of counsel), for appellant.

John G. Holland and George J. Kiriakos, both of Cairo, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal under section 13 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 276) of an order of the Board of Police and Fire Commissioners of the City of Cairo, dated November 4, 1970, which found appellant, Wilbert Beard, guilty of refusal to obey the orders of City Commissioner Meisenheimer and imposed a 30-day suspension without pay. The Board found the evidence insufficient to sustain a related charge of insubordination and dismissed that charge. The decision of the Board was affirmed by the Circuit Court of Alexander County on December 18, 1972.

Since there is no contention that the decision of the Board is contrary to the manifest weight of the evidence, the sole question on review is whether under the commission form of government the commissioner of public property (to whom the Police Department is assigned) is authorized, in the absence of a chief of police, to issue direct orders to senior officers on matters involving police expertise and experience.

The facts, which are undisputed, are as follows: Prior to September

26, 1970, the Cairo chief of police had resigned and the senior officer, Captain Abell, had been hospitalized. While no acting chief of police was formally appointed, the apparent understanding among the sergeants who were next in seniority was that they would each have charge of their respective shifts. On September 26, 1970, City Commissioner Meisenheimer verbally ordered the sergeants on duty to have officers on the street in the downtown business district where picketing was anticipated that afternoon. The appellant was in charge of the 2-to-10 P.M. shift that day. When the commissioner went downtown that afternoon to observe the picketing, he found that the order had not been complied with and that police officers were sitting in their cars near the site of the picketing.

To clarify the situation, the city commissioner held discussions with senior officers to reiterate his policy of having policemen "walking the streets" in case of picketing. The appellant expressed his disagreement with this policy in a private meeting on the subject. On the morning of October 3, the city commissioner caused to be posted on the bulletin-board written but unsigned orders to this effect as picketing was anticipated that day. He instructed another sergeant to make sure appellant took note of the order.

The city commissioner went downtown that afternoon upon being informed that picketing was in progress and that officers had remained in their patrol cars. Appellant refused to place officers on the street after being ordered by the city commissioner. However, there is evidence that after the commissioner left to confer with the mayor, he (appellant) did in fact place officers on the street, ostensibly under the command of the city commissioner.

Appellant contends principally that the commissioner had no authority to issue or enforce his order because he was not a "superior officer" within the meaning of Rule 22 of the Rules and Regulations of the Cairo Police Department (hereinafter referred to as "Rules") which requires obedience to orders of "superior officers."

At the outset it should be noted that none of the statutory or judicial authority cited by either party is dispositive on his issue. However, there are indications in the cited authority as to the probable and proper scope of the commissioner's powers.

Rule 22 provides that:

> "Policemen are to obey strictly and execute promptly and in good faith the orders of their superior officers.
>
> 'Superior officer' is defined in section 1 of the Rules as:
>
> \* \* \* an officer having supervision either temporarily or permanently over officers of lower rank."

Appellant contends that to be a superior officer the commissioner must first be shown to be an officer, which he cannot be because he is an elected official with no police training. The term "officer" is not defined in the Rules. Appellant, however, offers two statutory definitions which, it is argued, exclude the commissioner from the status of officer. The act governing rules of statutory construction (Ill. Rev. Stat. 1969, ch. 131, sec. 1.20) provides as follows:

> " 'General superintendent of police,' * * * 'chief of police,' * * * 'city marshal,' * * * mean 'policemen employed in the service of a municipality' * * * who are or shall hereafter be appointed and sworn as policemen."

Appellant contends the commissioner does not fall within this formulation because he is not "employed in the service of a municipality" and "appointed and sworn as (a policeman)."

The question presented is whether "general superintendent of police" is intended to be synonymous with commissioner, thus making the latter a "policeman employed in the service of a municipality." This is somewhat confused by the fact that persons performing the function of chief of police in some communities are given different titles, e.g., Commissioner of Police of Chicago. The solution appears to be found in the division of the Municipal Code stating the requirements of the commission form of municipal government (Ill. Rev. Stat. 1971, ch. 24, sec. 4—5—3.) Section 4—5—3 provides:

> "The Commissioner of each department shall be superintendent of that department."

This may be construed to mean that the city commissioner assigned the responsibility of the Police Department is the "general superintendent of police" within section 1.20 and thus a "policeman employed in the service * * * *."

Under the commission form of government adopted by the city of Cairo, the mayor and four commissioners are elected to form a council. Each commissioner is assigned the supervision of one or more municipal departments. The Code does not specify all the powers and duties of commissioners; however, section 4—5—2 provides generally that the council and its members shall have all executive, administrative and legislative powers and duties now held by executive, legislative and administrative municipal officers of properly incorporated municipalities. Section 4—5—5 vests the council with the power to appoint and discharge heads of departments, unless the appropriate commissioner has been given this right by ordinance. Section 4—5—7 provides that where section 10—1—1 through 10—1—45 (municipal civil service regulations) is adopted, then for purposes of that division, i.e., appointment and

discharge, each commissioner is to be considered head of the department assigned to him. These provisions evidence the apparent intent of the drafters of the Code, in giving commissioners "superintendent" status, to vest them with a measure of discretionary authority in the supervision of the activities of their respective departments.

Appellant next cites section 10—3—1 of the Municipal Code to support the contention that the city commissioner is not an officer, and thus not a "superior officer" within Rule 22. Section 10—3—1 defines "policeman" for purposes of minimum salary requirements as:

> "* * * member of a regularly constituted police department of a municipality, sworn and commissioned to perform police duties, and includes the chief of police * * *." (Emphasis added.)

Certain personnel, primarily part-time and temporary police, are specifically excluded by the section. The city commissioner is neither specifically included nor excluded. It should be noted that section 1 of the Rules incorporates by reference the above definition (formerly section 11—1 of the Cities and Villages Act).

Appellant next contends that section 1, Article II (par. 3) of the Rules puts the commissioner outside the chain of command of the Police Department, thus preventing him from being a "superior officer":

> "Subject to the approval of the Commissioner being first obtained, every General order or Special order shall be issued by the Chief of Police. The officer in command is responsible for the successful operation and efficiency of the Police Department, and is allowed reasonable discretion in issuing orders for the active and proper functioning of the police."

It is argued that the last sentence of this section vested appellant with the discretion to countermand orders which in good faith he believed to be unreasonable or inappropriate. The contention is without merit. It must be read together with Rule 22 requiring obedience to orders of superior officers.

This section does not purport to remove the city commissioner from a position of authority. Instead, authority is conferred upon him, since every general or special order issued by the chief of police must have the prior approval of the city commissioner. This suggests that he functions in more than an advisory capacity. Moreover, in situations where there is no chief of police, this section supports the position that the City Commissioner is in full command. The result of an elected official who is not a trained officer acting as functional head of the police department is a legislative determination which this court cannot alter.

Appellant cites two cases, neither of which are apposite here. In *Gardner v. Village of Chicago Ridge* (1970), 128 Ill.App.2d 157, 262

N.E.2d 829, *cert. denied*, 403 U.S. 919, 29 L.Ed.2d 696, 91 S.Ct. 2230, the issue was whether the village trustee, an officer analogous to commissioner, was under a mandatory duty (as distinguished from a permissible right) to instruct policemen in the performance of their duties. The court found no such duty and affirmed dismissal of the mandamus action.

*Nolting v. Civil Service Commission* (1955), 7 Ill.App.2d 147, 129 N.E.2d 236, involved an appeal of the discharge of a police officer, the primary question being the sufficiency of the commission's findings. The portion of this case quoted by appellant is accurate, though in effect dictum. It precedes a rather forceful discussion on the need for discipline in a police force, culminating with the quoted comments of Judge Tuley in *Coane v. Geary* (1939), 298 Ill.App.199, 206:

> " 'Police force is peculiar, *sui generis*, you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force, organized under the laws of the United States and equally as important to the functions it is required to perform.
>
> * * * And there is the same necessity of discipline * * *. Strict discipline must be enforced, and it must be enforced in a manner that is effective, and without the supervision or regulation of any other department of the state, and particularly, without any attempt on the part of the judicial department * * * to regulate it in any way, and particularly, to regulate its discipline. * * *' "

Appellees contend generally that the city commissioner was a superior officer within Rule 22, citing a number of sections of the Municipal Code, some of which are referred to above, and several Illinois cases.

*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill.App. 3d 864, 278 N.E.2d 212, contains a recent restatement of the importance of discipline in the police force (see *Coane v. Geary, supra*). In *Slocum v. Fire and Police Commissioners* (1972), 8 Ill.App.3d 465, 290 N.E.2d 28, the court upheld the Board's suspension of an officer for disobeying an order to wear an American flag on his uniform, an example of the extent to which courts will refrain from substituting their judgment for that of the head of police departments.

*Williams v. Police Board* (1972), 8 Ill.App.3d 345, 290 N.E.2d 669, again concerns the requirement of discipline in the police context. *Williams* is one of a line of cases holding that police officers refusing to submit to polygraph examinations are subject to disciplinary action, the guarantees of the fifth amendment notwithstanding.

The authority of the city commissioner in his capacity as a corporate

officer of a municipality is best summarized in *Cook County Police Association v. City of Harvey* (1972), 8 Ill.App.3d 147, 149, 289 N.E.2d 226, where the issue was whether the city could be forced to recognize and bargain with the association:

> "Defendants, as corporate authorities of a municipality, and in the exercise of official discretion, could prescribe duties and powers of all police officers employed by the City of Harvey. (Ill. Rev. Stat. 1969, ch. 24, par. 11—1—2.) By law, the defendant commissioners had the power to regulate examinations, appointments, and removals of Harvey policemen. (Ill. Rev. Stat. 1969, ch. 24, par. 10—1—5.) As a municipality, the City of Harvey possessed not only express statutory authority to deal with its policemen but also the authority implicitly necessary for the administration of its police force. Absent manifest and palpable abuse of discretion, the wisdom, necessity or propriety of any action taken by defendants in the exercise of the authority vested in them by law were for them to decide. *Hunt v. City of Peoria*, 30 Ill.2d 230, 231, 234, 195 N.E.2d 719; and see *People ex rel. Adamowski v. Wilson*, 20 Ill.2d 568, 170 N.E.2d 605."

One of the controlling principles in our democratic form of government is that any instrumentality involving the use of force or which may in any way impinge upon the guaranteed rights of its citizenry shall ultimately be responsible to officials elected by that citizenry. It is only when such public officials are in control of the police operation that such operation will reflect public judgment on essential issues affecting the work of the police. This does not mean that such officials shall interfere in the day-to-day work of the police or in their carrying out of duties which involve technical skill and judgment. But when elected officials in charge of a police department decide that under certain circumstances public policy dictates a particular line of action, then it could only result in chaos to say that the police are not bound by such decisions. Under the circumstances in this case Commissioner Meisenheimer not only had the authority to make the kind of decision he did about controlling violence in the streets of Cairo, he had a duty to inform himself and make such decisions. The citizenry of Cairo could rightly have complained about dereliction if he had not stepped in and attempted to have the police function discharged in a manner consonant with the requirements of a disruptive situation.

Thus authority appears to support the contention that, absent abuse of the discretion vested in him as a "corporate authority," the city commissioner was empowered to issue orders which were implicitly necessary for the administration of the Police Department. While the order

410

concerning a decision to place officers on the street was subject to criticism or support by various sergeants of the Cairo police force, it seems clear that its issuance did not constitute an abuse of discretion, and therefore, that Sergeant Beard's refusal to obey it was a violation of Rule 22 authorizing the disciplinary action taken here.

The judgment of the Circuit Court of Alexander County affirming the decision of the Board of Fire and Police Commissioners of the City of Cairo is affirmed.

Judgment affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.