MICHAEL FISCHER et al., Plaintiffs-Appellees, v. GENE J. BROMBO-LICH et al., Defendants-Appellants.

Fifth District No. 5—90—0430

Opinion filed January 11, 1991.

Dwight Taylor, of Collinsville, for appellants.

William C. Evers III, of Collinsville, for appellees.

W. Michael Gnavi, of Collinsville, for *amicus curiae*.

JUSTICE LEWIS delivered the opinion of the court:

On June 7, 1990, the plaintiffs, Michael Fischer, Mel Jones, and Alverna Wrigley, filed a complaint against the defendants, Gene J. Brombolich, Virginia M. Trucano, Melvin P. Pamatot, and the City of Collinsville. In the complaint, the plaintiffs sought a preliminary and permanent injunction, a declaratory judgment, a writ of *certiorari*, an order of prohibition, and a writ of *quo warranto* against the defendants, the purpose of all these causes of action being to prevent the city council of the City of Collinsville from enforcing ordinance 2361, which was passed by the council on April 30, 1990. On June 27, 1990, the circuit court of Madison County held a hearing on the plaintiffs' complaint, and on July 5, 1990, the court entered an order finding ordinance 2361 invalid and enjoining the defendants from enforcing the ordinance. The defendants appeal this order.

Before considering the facts of this case, we note that a petition to intervene was filed by some residents and taxpayers of the City of Collinsville. The intervenors' petition was denied by the court at the hearing on the preliminary injunction; however, the court granted the intervenors the status of *amicus curiae* and permitted the intervenors' representative to argue and to file a brief. The intervenors have also filed an *amicus curiae* brief on appeal, but because the brief raises no other issues than those raised by the defendants, we need not consider the arguments raised therein separately.

The essential facts of the case *sub judice* are as follows. Prior to 1983, the City of Collinsville, a non-home-rule municipality, operated under the regular commission form of government pursuant to the Illinois Municipal Code. (Ill. Rev. Stat. 1989, ch. 24, par. 4—1—1 *et seq.*) In 1979, a referendum was presented to the electorate in which the City of Collinsville adopted the modified commission form of government pursuant to section 4—3—19 of "The Commission Form of Municipal Government" article of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—1 *et seq.*), which form of government was to become effective at the time of the election of the commissioners in 1983. (Ill. Rev. Stat. 1979, ch. 24, par. 4—3—19.) Under the modified commission form of government, the commissioners were to run for a specific office instead of running as a commissioner at large; however, under both the regular commission form of government and the modified form of government, the mayor was to be the commissioner of public affairs. Ill. Rev. Stat. 1989, ch. 24, par. 4—5—3.

In 1983, Michael Fischer, one of the plaintiffs, was elected com-

missioner of public health and safety, and Gene Brombolich, one of the defendants, was elected as commissioner of public affairs, *i.e.*, the mayor of Collinsville. Both Fischer and Brombolich were reelected to these offices in the 1987 election, and their current terms of office do not expire until 1991. The two remaining plaintiffs, Mel Jones and Alverna Wrigley, were registered voters and taxpayers of the City of Collinsville and had voted for Michael Fischer as commissioner of public health and safety in the 1987 election. The other defendants, Virginia M. Trucano and Melvin P. Pamatot, were two of the five commissioners who had voted with Brombolich to pass ordinance 2361. The fifth commissioner of the city council had voted against the ordinance in question and was not a party to this litigation.

On April 30, 1990, the city council of the City of Collinsville voted 3 to 2 to pass ordinance 2361. Ordinance 2361 amended ordinance 2042, which had been passed in November 1982 and had become effective on April 25, 1983, when the new council had taken office. In ordinance 2042, the various subdepartments of the City were distributed among the five major departments pursuant to the statute (Ill. Rev. Stat. 1989, ch. 24, par. 4—5—2), *i.e.*, the department of public affairs, the department of accounts and finances, the department of public health and safety, the department of streets and public improvements, and the department of public property. Under ordinance 2042, the police department and the department of canine control were two of the subdepartments under the supervision of the commissioner of public health and safety (Fischer). Ordinance 2361, the subject of this litigation, amended ordinance 2042 by transferring the police department and the canine control department to the department of public affairs (Brombolich). Ordinance 2361 was to become effective on May 1, 1990, during plaintiff Fischer's term of office.

Subsequently, plaintiffs filed their complaint. The defendants filed a motion to dismiss the count seeking injunctive relief and an answer to the plaintiffs' complaint. On June 27, 1990, a hearing was held on the plaintiffs' complaint; however, only the count seeking the preliminary injunction was considered. At the hearing, the court heard the arguments of counsel and issued its oral pronouncement, but subsequently, on July 5, 1990, the court entered a written order in which the court denied the defendants' motion to dismiss count I of the complaint, found that the enactment of ordinance 2361 was not valid and granted the plaintiffs' petition for preliminary injunction. The court stayed the enforcement of the preliminary injunction for 30 days, but no further stays were granted and the preliminary injunction prohibiting the enforcement of ordinance 2361 went into effect.

On appeal, the defendants contend that the city council had the statutory power to enact ordinance 2361, that the plaintiffs' complaint did not state sufficient information for a preliminary injunction, and that the law and the facts did not support the issuance of the preliminary injunction. We first consider whether the city council of the City of Collinsville had the statutory power to enact ordinance 2361.

 Under the Illinois Constitution, a non-home-rule municipality only has the authority that is expressly provided under the statute or which is necessarily implicit from the express authority. (Ill. Const. 1970, art. VII, §7; *Baltis v. Village of Westchester* (1954), 3 Ill. 2d 388, 121 N.E.2d 495.) An implied power asserted by a municipality may be gathered from a single express grant of authority or from several. (*Chicago School Transit, Inc. v. City of Chicago* (1966), 35 Ill. 2d 82, 219 N.E.2d 522.) If a municipality's actions are in conformity with the express and the implied powers granted, then its actions are valid, otherwise they are not. (*Baltis*, 3 Ill. 2d 388, 121 N.E.2d 495.) Because a municipality only derives its powers by an express grant from the legislature, the statutes granting this power are strictly construed, and any doubt concerning an asserted power is resolved against the municipality. (*Village of River Forest v. Midwest Bank & Trust Co.* (1973), 12 Ill. App. 3d 136, 297 N.E.2d 775.) Therefore, our first consideration must be to determine if the city council had the express or implied authority to pass ordinance 2361.

The plaintiffs contend that sections 4—5—2 and 4—5—3 do not authorize the city council's transfer of the subdepartments under the main departments during a commissioner's term of office, where, as here, the municipality has a modified commission form of government, because such a construction of these sections would disenfranchise the voters. The plaintiffs do not contend that the council can never realign the subdepartments, but they contend that the realignment can only be done prior to an election and can be done only in such a manner as to allow the voters to know what departments a commissioner will be in charge of when elected. The defendants argue that these sections permit the realignment of the administrative duties of the commissioners at any time. According to the defendants, the voters were not disenfranchised since commissioner Fischer retained his legislative powers under the ordinance. The defendants contend that for the court to determine that the realignment of the subdepartments can occur only prior to an election of the commissioners in such a manner as to be effective upon the new commissioners taking office required the court to read into the statute language that was not present, *i.e.*, a time limitation for the realignment, which is in contra-

vention of the rules of statutory construction.

The defendants support their argument by asserting that in 1965 the legislature added section 4—3—19 to "The Commission Form of Municipal Government" article of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 4—3—19), which section provided for the modified commission form of government. In conjunction with the addition of section 4—3—19, the legislature also amended section 4—5—3; however, the legislature did not alter section 4—5—2. The defendants contend that its authority to transfer subdepartments rests in section 4—5—2, and, prior to 1965, the subdepartments could be realigned at any time the council felt it was in the best interest of the public to do so. Because section 4—5—2 remained unchanged after 1965, the defendants claim this authority remained intact. The defendants argue that section 4—5—2 places no limitation on its authority to transfer subdepartments from one department to another, and that the circuit court erroneously interpreted section 4—5—2 when it determined that it did not have this authority.

■■ ■ In construing a statute, it is fundamental that a court must ascertain the intent of legislature and give it effect. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) To determine the legislature's intent, the court will examine the entire statute and will seek to determine the objective the statute sought to accomplish and the evils it desired to remedy. (*City of Springfield*, 105 Ill. 2d 336, 473 N.E.2d 1313.) Additionally, to ascertain the legislature's intent, subsequent amendments to the statute will be considered. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 429 N.E.2d 492.) "Where the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be avoided." (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312-13, 527 N.E.2d 1264, 1269.) Thus, a proper interpretation of a statute will not rest solely on its language, but it will also be grounded on the nature, objects and the consequences which would result from construing the statute one way or another. *Mulligan*, 123 Ill. 2d 303, 527 N.E.2d 1264.

■■ Oftentimes, when construing a statute, legislative debate at the time of the passage of the provision provides insight into the legislative intent. In this case, there is no legislative history to guide our interpretation, and, thus, our construction is based upon the language of the statutory provisions involved and the apparent objective of the legislation. Section 4—5—3 provides as follows:

"Except where candidates for commissioner are required to run for a specific office, the council, at the first regular meeting after an election of a member or members, shall designate by a majority vote one commissioner to be commissioner of accounts and finances, one to be commissioner of public health and safety, one to be commissioner of streets and public improvements, who ex-officio shall be commissioner of public works, and one to be commissioner of public property. This designation may be changed by the council whenever it appears that the public service would be benefited thereby. The mayor shall be commissioner of public affairs. The commissioner of each department shall be superintendent of that department.

If the municipality has voted, as provided in Section 4—3—19, to require candidates for commissioner to run for a specific office, each commissioner shall be superintendent of the department bearing the same designation as the office to which he was elected. The mayor shall be commissioner of public affairs. The Commissioner [*sic*] of streets and public improvements shall be, ex-officio, commissioner of public works." (Ill. Rev. Stat. 1989, ch. 24, par. 4—5—3.)

The language of the foregoing section, when considered with section 4—3—19, is unambiguous, and, from these two sections (sections 4—5—3 and 4—3—19), it is clear that the intent of the legislature, in making provision for a modified commission form of government, was to give the voters the authority to designate which commissioner was to supervise a specific department rather than giving this authority to the commissioners themselves.

Section 4—5—2 states as follows:

"The council and its members shall possess and exercise all executive, administrative, and legislative powers and duties now possessed and exercised by the executive, legislative, and administrative officers in municipalities which are treated as properly incorporated under this Code or which hereafter incorporate under this Code, except that in municipalities under the commission form of municipal government, the board of local improvements provided for by Article 9 shall remain a separate and distinct body, with all the rights, powers, and duties contained in Article 9.

The executive and administrative powers and duties in municipalities under the commission form of municipal government shall be distributed among 5 departments, as follows:

1. Department of public affairs.

2. Department of accounts and finances.
3. Department of public health and safety.
4. Department of streets and public improvements.
5. Department of public property.

The council, by ordinance, (1) shall determine the powers of and duties to be performed by each department and shall assign them to the appropriate departments; (2) shall prescribe the powers and duties of officers and employees, and may assign officers and employees to one or more of the departments; (3) may require an officer or employee to perform duties in 2 or more departments; and (4) may make such rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the municipality." (Ill. Rev. Stat. 1989, ch. 24, par. 4—5—2.)

The defendants claim that section 4—5—2 allows the realignment of the subdepartments, while it is section 4—5—3 which allows the realignment of the commissioners under the regular commission form of government. The defendants contend that it is the language "shall determine the powers of and duties to be performed by each department and shall assign them to the appropriate departments" which enables them to transfer plaintiff Fischer's administrative duties regarding the police department and the department of canine control, especially where their actions are "necessary or proper for the efficient and economical conduct of the business of the municipality." The defendants assert that ordinance 2361 does not realign the commissioners, but that the ordinance simply realigns the subdepartments under the department of which the commissioner is superintendent. Because the legislature did not amend section 4—5—2 when it added sections 4—3—19 and amended 4—5—3, the defendants contend that the legislature intended to allow the municipalities the same authority to realign the subdepartments at will under the modified commission form of government as it had under the regular commission form of government.

■ Clearly, section 4—5—2 presents an ambiguity; however, to accept the defendants' interpretation would render the legislature's amendment to allow a modified commission form of government useless. If the defendants' reasoning is taken to its fullest scope, after an election, the council could realign all of the subdepartments of the department of public affairs and transfer them to another department, and, at the same time, transfer all of the subdepartments of the department of public health and safety to the department of public affairs, *i.e.*, in essence, leaving the commissioners with the titles to

which they had been elected but none of the functions for which the voters had presumptively chosen them. By doing this, the modified commission form of government is defeated, and the municipality's modified commission form of government is essentially the same as if the government were still the regular commission form. As was previously stated, under the rules of statutory construction, a statutory provision should not be interpreted in such a manner as to render the statutory language useless or illogical. (*Mulligan*, 123 Ill. 2d 303, 527 N.E.2d 1264.) Because the defendants' interpretation renders the language providing for a modified commission form of government illogical, that interpretation must be rejected. Further, there is considerable doubt that the defendants had the express authority for their actions, and, therefore, that doubt must be resolved against them. *Village of River Forest*, 12 Ill. App. 3d 136, 297 N.E.2d 775.

■ Additionally, ordinance 2361 effectively converts the municipality's modified form of government back to a regular commission form of government. The ordinance, thus, in effect, circumvented the constitutional and statutory requirement which mandated that a municipality's form of government can only be changed by referendum. (Ill. Const. 1970, art. VII, §7; Ill. Rev. Stat. 1989, ch. 24, par. 4—3—20.) The ordinance appears to have been enacted outside of the express or implied authority granted by the constitution and the statute, and where an ordinance is enacted without express or implied authority, the ordinance is invalid. (*Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342.) Therefore, the circuit court correctly held that ordinance 2361 was invalid.

■ We next consider the remaining issues raised by the defendants. Because of the nature of the defendants' second and third issues and their interrelationship, we will consider them together. The defendants assert that the plaintiffs failed to allege sufficient facts to warrant the granting of the injunctive relief and that the circuit court abused its discretion in granting the injunction. For a preliminary injunction to issue, it is well established that a plaintiff has the burden of establishing that (1) he has a clearly ascertainable right for which he seeks protection, (2) he will suffer irreparable harm, (3) there is an inadequate remedy at law, and (4) he is likely to be successful on the merits. (*Opportunity Center of Southeastern Illinois, Inc. v. Bernardi* (1986), 145 Ill. App. 3d 899, 496 N.E.2d 340; *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) A preliminary injunction is an extraordinary remedy and must be granted with the utmost care, and a court should not issue it unless the need is clear. (*Opportunity Center of Southeastern Illinois, Inc.*, 145 Ill. App.

3d 899, 496 N.E.2d 340.) The purpose of the preliminary injunction is to preserve the status quo, *i.e.*, the last peaceable and uncontested status preceding the pending controversy. (*Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 404 N.E.2d 1097.) The granting of a preliminary injunction is within the discretion of the court, and, since a preliminary injunction is granted before a hearing is conducted on the merits of a case, the justification for the issuance of the injunction can be found principally in the sufficiency of the complaint. *Opportunity Center of Southeastern Illinois, Inc.*, 145 Ill. App. 3d 899, 496 N.E.2d 340; *S & F Corp.*, 60 Ill. App. 3d 824, 377 N.E.2d 73.

The defendants in the case *sub judice* argue that the plaintiffs failed to allege a clearly ascertainable right in their count for injunctive relief; that the plaintiffs' claim that they suffered irreparable harm is a bare conclusion; and that the plaintiffs did have an adequate remedy at law as the other counts in the plaintiffs' complaint attest. Our review of the plaintiffs' complaint reveals that the plaintiffs alleged sufficient facts to justify the issuance of the preliminary injunction.

In count I of the plaintiffs' complaint, the following uncontroverted facts were alleged: At all pertinent times, plaintiff Fischer was the duly elected commissioner of public health and safety for the City of Collinsville, and that he was initially elected to this office in April 1983 and was subsequently reelected in April 1987. Fischer's current term of office will not expire until April 1991. The other plaintiffs in this cause of action were residents who voted for Fischer in the April 1987 election. At the time of the passage of ordinance 2361, the City of Collinsville was a municipal corporation which operated under the modified commission form of government, *i.e.*, that the voters elected the commissioners to a specific office, and that this form of government had been in effect at both the 1983 election and the 1987 election. Prior to the 1983 election, ordinance 2042 had been passed by the city council. This ordinance listed the subdepartments assigned to each of the commissioners, *e.g.*, the following subdepartments were listed as being under the office of the department of public health and safety: fire department, emergency ambulance service, police department, and canine control. On April 30, 1990, the three defendant commissioners passed ordinance 2361 by a vote of 3 to 2. In this ordinance, two of the subdepartments listed under the department of public health and safety, the police department and the canine control department, were removed from under the department of public health and were placed under the department of public affairs. The

plaintiffs also alleged in their complaint that the passage of ordinance 2361 denied plaintiff Fischer his right to the office to which he was elected; that his injury could not be adequately redressed by an adequate remedy at law as each day deprived him of his right to his elected office; and that plaintiff Fischer has suffered irreparable injury and will continue to suffer irreparable injury if an injunction is not issued. We find these allegations were sufficient to place the injunction issue before the court.

The first consideration raised by the defendants is that the plaintiffs had not a clearly ascertainable right which warranted protection, and that the allegation that plaintiff Fischer had a right to office was simply a conclusion. In addition, the defendants contend that, if anything, plaintiff Fischer was only deprived of a portion of his office. It is clear from the plaintiffs' complaint that plaintiff Fischer was given the right to the office of the department of public health and safety by the voters of the City of Collinsville, and, since the department of public health and safety included the police department and the department of canine control at the time of plaintiff Fischer's election, the voters determined by their votes for plaintiff Fischer that they intended him to be the head of the police department and the department of canine control. In addition, the statute gave plaintiff Fischer the right of supervision of the subdepartments which were under his department at the time of his election. (Ill. Rev. Stat. 1989, ch. 24, par. 4—5—3; see *Beard v. Board of Fire & Police Commissioners* (1974), 21 Ill. App. 3d 404, 315 N.E.2d 319.) Thus, the plaintiff had asserted a clearly ascertainable right.

Second, we find that plaintiff Fischer suffered irreparable injury as a result of the passage of ordinance 2361 and that he had no adequate remedy at law. For there to be an adequate remedy at law, the remedy must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as an equitable remedy. (*La Salle National Bank v. Refrigerated Transport Co.* (1987), 165 Ill. App. 3d 899, 520 N.E.2d 768.) Additionally, irreparable harm occurs only where monetary damages cannot adequately compensate the injury or where the injury cannot be measured by pecuniary standards. (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 515 N.E.2d 1339.) The defendants have argued that the plaintiffs have not alleged that a *mandamus* action is not an adequate remedy at law. A *mandamus* is an extraordinary remedy that is not issued as a matter of right, but is issued only where a plaintiff can demonstrate a clear right to the relief requested. (*Etten v. Lane* (1985), 138 Ill. App. 3d 439, 485 N.E.2d 1177.) If an administrative

board or official has arbitrarily failed to act, *mandamus* will lie to compel performance of a duty which a plaintiff is entitled to have performed. (*Etten*, 138 Ill. App. 3d 439, 485 N.E.2d 1177.) In the instant case, there was no demonstration that the plaintiffs had a clear right to the relief requested, as the right asserted by the plaintiffs rested on the statutory interpretation of the Illinois Municipal Code. It is evident that an action for *mandamus* would not lie in the instant case.

■■■ With regard to the issue of irreparable harm, the defendants assert that the plaintiffs have not alleged that their "other rights" could not be measured in monetary terms; therefore, the plaintiffs have not alleged sufficient facts to show irreparable harm justifying the issuance of the injunction. The defendants' assertion is purely speculative. The defendants fail to explain what the "other rights" of the plaintiffs are which are measurable by monetary terms, and unfortunately, we are unable to determine what those "other rights" may be. It is clear from the plaintiffs' complaint that plaintiff Fischer's right to hold office is not quantifiable in monetary terms and that his complaint adequately avers that he will suffer irreparable harm from the defendants' actions.

■■■ ■ The defendants contend that the plaintiffs failed to allege that they were likely to succeed on the merits of their complaint. It is well established that a party is not required to make out a case that will in all events warrant relief on the merits; it is only necessary that the moving party raise a fair question as to the existence of the right claimed and that he will be entitled to the relief prayed for if the proof should sustain his allegations. (*Tierney v. Village of Schaumburg* (1989), 182 Ill. App. 3d 1055, 538 N.E.2d 904.) Here, the plaintiffs' complaint raised a fair question regarding whether the defendants' actions were authorized under the statute. The circuit court, in its oral pronouncement, found that the plaintiffs would have a great probability of success on the statutory construction issue, and, thus, the court determined that the plaintiffs were likely to succeed on the merits of this case. Because of our statutory construction of the foregoing sections of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, pars. 4—5—2, 4—5—3), the court's determination was not unfounded, and the plaintiffs did show that they were likely to succeed on the merits.

■■■ Lastly, we consider whether the circuit court erred in granting the preliminary injunction. Because the granting or denial of a preliminary injunction is a matter of discretion with the court, on appeal, a reviewing court will overturn the circuit court's decision only if that decision is against the manifest weight of the evidence and is

an abuse of the court's discretion. (*Agrimerica, Inc. v. Mathes* (1988), 170 Ill. App. 3d 1025, 524 N.E.2d 947; *Shodeen*, 162 Ill. App. 3d 667, 515 N.E.2d 1339.) From our previous analysis of the sufficiency of the plaintiffs' complaint, we find that the circuit court did not abuse its discretion and that its decision was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Madison County granting the preliminary injunction is affirmed.

Affirmed.

HOWERTON and GOLDENHERSH, JJ., concur.