MARGARET MALUNNEY *et al.*, Plaintiffs-Appellees, *v.* GEORGE A. MEADE *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 76-35

Opinion filed January 26, 1977.

474

E. M. Sullivan, of Amboy, for appellants.

Luke R. Morin and Joseph E. Heaton, both of Dixon, Devine, Ray & Morin, of Dixon, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs filed suit seeking to impose a constructive trust on a two-thirds interest in a 120-acre farm, and to partition the land. The trial court found in favor of the plaintiffs and entered a decree of partition from which the defendants appeal. They contend that the proof was insufficient to establish a constructive trust and that the action was barred by laches and the statute of limitations.

The farm had been owned by George Meade, Sr., who died intestate in 1931 leaving his wife Mary Meade (with a one-third interest in the property) and his children George A. Meade, James Meade, John Meade, Helen Sharkey, Julia Meade, Frances Quest, Margaret Malunney, Mary McLaughlin and Kathryn Sharkey (each with a 2/27th interest in the property).

The dispute is between George A. Meade and his family, the

defendants, and the other children of George Meade, Sr., or their heirs, the plaintiffs, and arises from the conveyance by the children of George Meade, Sr., of their interests in the farm to George A. Meade following the senior Meade's death. At that time the real estate was subject to an existing mortgage. In order to pay the mortgage and to save the real estate for their mother, the children sought a loan from the Federal Land Bank. The representative of the bank required that the interests of the children other than George A. Meade be conveyed to George A. Meade. The mortgage was payable at the end of 35 years, maturing on June 1, 1970.

Mary Meade died in 1939 and each of her children inherited a 1/27th interest as her heirs-at-law. This interest is not in dispute.

Helen Sharkey, one of the plaintiffs, testified that she was present at a conference in the office of the attorney for her father's estate at the time the conveyances were made by the other children of Mary Meade to George A. Meade. George A. Meade was there together with their mother. She signed after the attorney stated the understanding, in George A. Meade's presence, that following her mother's death each one was to have his or her share. George A. Meade did not make any comments. It was further the understanding that George was to operate the farm, as he was living on it with his mother, pay the mortgage and support the mother from the farm income. She said that the family "trusted him that he would be honorable with the rest of the family." She further said that at the meeting in the office of the attorney her mother stated that she wanted it understood that it wasn't for one child alone, that all the children were blood relations and she wanted them to share equally. There was no consideration paid for her conveyance or for the conveyance of the other brothers and sisters to whom the deeds were mailed and returned executed. She made no inquiry as to whether the payments on the mortgage were being made. She said that about a year after his mother's death George A. Meade ceased to farm the property and rented it to a tenant farmer.

The next conversation she had with her brother with regard to the farm was when one of her sisters was sick in 1949 and she asked George A. Meade to sell the farm in order to pay expenses. He refused. After her sister died in 1950 she again asked that the property be sold to pay the large hospital bills incurred. George said that he would borrow $600 but she told him that would not do any good. On further examination Mrs. Sharkey stated that at the time she talked to him about her sister's expenses George never said that the others had no interest in the farm.

She testified that the first notice that she had that George claimed to be the owner of the two-thirds interest from their father was when she received a letter from George Meade's lawyer dated March 20, 1972, stating that George's understanding of the transaction by which he took

title to a two-thirds interest in 1935 was that the conveyances made to him were in consideration of his assuming the mortgage indebtedness and that for his paying off the mortgage and maintaining the home for his mother he was to continue as the owner of the two-thirds interest.

George A. Meade called as an adverse witness testified only to the extent of identifying the various conveyances which included deeds dated August 16, 1947, in which the defendants George A. Meade and Mildred Meade, his wife, conveyed the premises to a nominee who in turn reconveyed it to them as joint tenants. However, there was no evidence that these conveyances were communicated to the other members of the family.

■■ Defendants first argue that the evidence at best shows that George A. Meade acquired legal title to the property upon an oral promise to convey to the others and that he later refused to convey but with no proof that he had falsely promised initially. On these facts defendants claim that an express oral trust was created, void under the Statute of Frauds, and that the facts do not support a constructive trust in equity.

In *Wold v. Wold*, 43 Ill. App. 3d 773, 776-77 (1976), this court has recently restated the general rules which apply to the formation of constructive trusts:

> "Constructive trusts are divided into two classes: one in which actual fraud is the grounds for raising a trust, and one in which the existence of a fiduciary relationship and the subsequent abuse of the confidence reposed is sufficient to establish the trust. (*Bremer v. Bremer* (1952), 411 Ill. 454, 457.) Where a fiduciary or confidential relationship does not exist as a matter of law, *e.g.*, principal and agent, attorney and client, it may nonetheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another who, as a result, gains an influence and superiority over him. (*McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499.) Factors to be considered in determining whether a fiduciary relationship exists include degree of kinship, disparity of age, health, mental condition, and the extent to which the allegedly servient party entrusts the handling of his business and financial affairs to the other and reposes faith and confidence in the dominant party. (*Kester v. Crilly* (1950), 405 Ill. 425, 432; *McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499.) Once a fiduciary relationship has been established, the burden rests upon the fiduciary to show the fairness of the questioned transaction."

It is true, as defendants argue, that more must be shown to establish the confidential relationship upon which the constructive trust is based than the fact that the parties are related as brothers and sisters. (See *Bremer v. Bremer*, 411 Ill. 454, 465 (1952).) However, a fiduciary relationship exists

"where, in fact, trust and confidence are reposed by one person in another, who, as a result thereof, gains influence and superiority over the other." (*Bremer v. Bremer*, at 465. See also *McCartney v. McCartney*, 8 Ill. 2d 494, 499 (1956).) The degree of kinship is one factor to be considered in determining whether a fiduciary relationship exists. *Wold v. Wold*, 43 Ill. App. 3d 773, 776-77.

■■ In a memorandum opinion the trial judge made the following findings of fact:

> "It is uncontradicted that there was an agreement that the defendant's brothers and sisters were to deed their interest in the real estate to the defendant, in consideration of his promise to farm the land or collect the rents and to pay the mortgage. The brothers and sisters understood that it was their mother's wishes that the farm was to be divided equally between them after her death. The brothers and sisters trusted the defendant and believed that he would be honorable with them after her death. The defendant obtained title to the farm by virtue of the trust of his brothers and sisters. This trust and confidence and the resulting influence and superiority created a fiduciary or confidential relationship which gave rise to a constructive trust."

These findings of fact, supported by the record, are sufficient to prove that a fiduciary relation existed giving rise to a constructive trust. The fiduciary relation having been established, the defendants did not sustain their resulting burden to show that the transaction with the fiduciary was fair and entered into in good faith. (See *Ciolek v. Jaskiewicz*, 38 Ill. App. 3d 822, 829-30 (1976).) In these circumstances we will not reverse. See *Bremer v. Bremer*, 411 Ill. 454, 466; *Wold v. Wold*, 43 Ill. App. 3d 773, 778; *Rapp v. Bowers*, 38 Ill. App. 3d 668, 670-71 (1976).

■■■ Defendants next contend that even if the relationship between the parties is sufficient to raise a constructive trust the plaintiffs were barred by laches and the five-year statute of limitations applicable to oral agreements. (Ill. Rev. Stat. 1973, ch. 83, par. 16.[1] See also *Schreiner v. City of Chicago*, 406 Ill. 75, 90 (1950), holding that only express trusts are exempt from the statute of limitations or laches.) Defendants place reliance on Mrs. Sharkey's testimony that in 1949 before her sister's death and in 1950 after the death she asked George to sell the farm and divide the proceeds and he refused. They argue that this demand and the refusal on the part of the defendant more than 22 years before the action was commenced establishes laches and the bar of the statute of limitations. They further note that all of the brothers and sisters with the exception of

---

[1] While it has been stated that the Statute of Limitations "does not strictly apply to suits in equity" (*Bremer v. Bremer*, 411 Ill. 454, 468), it may apply as a factor in the determination of whether laches has been shown. See *Anderson v. Lybeck*, 15 Ill. 2d 227, 234-35 (1958).

two of them during all of the time in question lived within a relatively short distance of the farm and knew that George Meade was collecting rents and paying taxes.

Defendants place principal reliance on *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958). The general rule of the case that one who knowingly sleeps on his rights for a great length of time may be chargeable with lack of due diligence which will bar his claim in equity is undisputed. We conclude, however, that defendant is not in a position to invoke the defense under the facts of this case. The burden of proving the affirmative defense of laches or the bar of the statute of limitations is on the party asserting it. (*Auer v. Wm. Meyer Co.*, 322 Ill. App. 244, 264 (1944).) The fact that George A. Meade refused to sell the property in 1949 or 1950 in connection with the expenses arising from the illness and death of one of his sisters is not sufficient to show that he was claiming ownership without regard to his promise to reconvey when the mortgage was paid. The trial judge in his memorandum found as a fact that the first reasonable occasion for the plaintiffs to have knowledge that defendant claimed complete ownership was June 1, 1970, when the loan matured and when according to the understanding of the parties the property was to be reconveyed. We do not find this conclusion to be against the manifest weight of the evidence and therefore conclude that neither laches nor the statute of limitations barred the plaintiff's claim.

The judgment is affirmed.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.