CHARLES DEAN McCREIGHT, Plaintiff-Appellant, v. MARSHALL LANE McCREIGHT *et al.*, Defendant-Appellees.

Third District   No. 3—83—0784

Opinion filed January 9, 1985.

Peter H. Lousberg and Mark A. Olberts, both of Lousberg, McClean, Snyder & Schwarz, of Rock Island, for appellant.

Samuel S. McHard, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a constructive trust imposed by the circuit court of Mercer County in favor of Lane McCreight against farm property the title of which was in Dean McCreight. The property which is the subject of this trust is a 236-acre tract which was originally owned by Ralph McCreight. Ralph died in 1953 and bequeathed the farm to his wife for life, then to his son Samuel (Beard) McCreight for life, and upon the death of Beard to the issue of Beard living at the time of Beard's death.

After Ralph died, Beard McCreight continued to operate the farm and employed his two sons Dean and Lane as laborers to whom he paid a salary. In 1960, Beard began to suffer serious financial difficulties. Beard consulted his attorney, and upon his advice Beard, Dean, Lane and Ralph's wife applied for a loan from Monmouth Production Credit Association for $52,000. Due to the state of the title to the farm, Beard was unable to secure long-term financing. In 1962, Beard's financial problems became acute, and Beard's attorney advised the family that unless the contingent remainder interests were vested and the life tenancies terminated, there would be no way of obtaining the needed financing. The attorney devised a method for obtaining the needed financing by obtaining a decree from the circuit court of Mercer County pursuant to section 50 of "An Act to regulate *** chancery" (Ill. Rev. Stat. 1959, ch. 22, par. 50). The decree terminated the life estates (Florence was to be paid $22,500 for her life estate and Beard was to be paid $45,500), and $40,000 was to be paid to fund a trust for the benefit of Dean and Lane which was to be terminated upon the death of Beard. The entire project was to be financed by a mortgage loan from Northwestern Mutual Insurance Company in the amount of $70,000.

A trust was in fact established and funded with $40,000 from the Northwestern mortgage loan, and $30,000 was paid to Dean, who simply endorsed the check to Beard. The decree further provided that the trust was to sell the property to Dean, and a trust deed was in fact executed. A quit-claim deed released the life estates, and a quit-claim deed was executed by Dean and his wife to Beard and his wife, conveying the farm to Beard which was retained in the attorney's file and never recorded. The mortgage application to Northwestern Mutual valued the farm at $138,000.

Beard continued to manage the farm throughout the period fol-

lowing the entry of the decree until his death in 1976. Beard and his wife lived in the main farmhouse on the property, Dean lived in a farmhouse on property which the family leased, and Lane moved to another farm owned by his wife and began farming there. Beard's share of the net farm proceeds was two-thirds, while Dean received only one-third. The tax returns also disclose that Beard took all the depreciation from farm assets on his tax returns. In 1980, the trust established for the benefit of Lane and Dean distributed $38,700 to each of its beneficiaries, and Dean refused to convey one-half of the farm property to Lane.

In 1977, this proceeding was commenced by Lane to establish a constructive trust and for an accounting. Lane maintained that he had understood at the time the decree was entered in 1962 that the court proceeding was merely a means of obtaining needed financing and that he was not foregoing his share of the farm. In fact, Lane understood that either he or Dean could have been "at the top of the paper," meaning the complaint. In fact, Dean claimed that it was not his signature on the complaint. The trial court agreed that a constructive trust should be granted and that Lane was entitled to one-half interest in the McCreight farm despite the decree. This action for constructive trust was styled as a continuation of the previous proceeding to change title.

Dean now argues that the proceeding commenced to establish a constructive trust was an attack on a prior judgment and that collateral attacks can be maintained only upon a showing of fraud or for lack of jurisdiction. A lack of jurisdiction was never alleged.

■■ Dean further argues that fraud was neither alleged nor proved by Lane. In discussing this issue, Dean relies upon *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, *aff'd in part, rev'd in part* (1980), 78 Ill. 2d 555, 402 N.E.2d 181, *appeal after remand* (1982), 107 Ill. App. 3d 222, 437 N.E.2d 783 (*Kenroy III*). However, this case better supports Lane's position. *Kenroy III* deals with this precise issue, but rather than finding a constructive trust to be a collateral attack on a prior judgment the appellate court in *Kenroy III* found it to be a new proceeding. In this case, Lane is not seeking to vacate the previous judgment or to have the judgment declared a nullity. Rather, he is seeking to enforce an agreement with his brother to reconvey one-half of the farm to him after the death of their father. Because the Statute of Frauds bars an action at law, the equitable doctrine of unjust enrichment provides an action in equity. Therefore, we find that a constructive trust is not a collateral attack on the 1962 judgment but a means of enforcing an

understanding between Lane and his family that the 1962 court proceeding would not change the devise of his grandfather.

■ The next issue raised by Dean is whether the trial court properly imposed a constructive trust on the farm property. In this case, the trial court found that no fiduciary relationship existed between the brothers. We disagree. Although a sibling relationship alone is not enough to establish a fiduciary duty, when one sibling reposes trust and confidence in another a fiduciary duty arises. In *Bremer v. Bremer* (1952), 411 Ill. 454, 104 N.E.2d 299, the supreme court imposed a constructive trust in a situation very similar to this case. In *Bremer*, two brothers who had formed a farm partnership needed to borrow money in order to continue to operate the farm. Louis, who sought the loan, represented to his brother Fred that the partnership could not obtain the needed loan and that the entire property interest must be transferred to Louis. After the loan was repaid and Fred had died, his widow sought to have Fred's share of the farm reconveyed to her. The court imposed a constructive trust after finding that a fiduciary relationship existed.

Among the facts considered important by the court in *Bremer* in finding that a fiduciary relationship existed between the brothers was the fact that there was no consideration for the transfer. Although Dean argues that his purchase of the farm was a *bona fide* arms-length transaction, the record does not support his argument. The $40,000 which was used to establish the trust for Lane and Dean which issued the deed to the farm to Dean was a fund from the Northwestern Mutual mortgage loan, the security for which was the farm itself. In fact, Dean did not use any of his own money, and the facts clearly establish that he had no money to use. The court in *Bremer* found that a fiduciary relationship arises in situations where a person reposes trust and confidence in another and as a result he gains influence and superiority over the other. (*Bremer v. Bremer* (1952), 411 Ill. 454, 465, 104 N.E.2d 299, 305.) It is clear from Lane's testimony that he was placed in a position by the 1962 decree where only Dean could restore his portion of the farm to him. Dean was, therefore, in a position of superiority and had considerable influence over Lane. Furthermore, it is clear that Lane never intended to relinquish his interest in the farm, and for the above reasons we find that a fiduciary relationship existed between the brothers.

A constructive trust will be properly imposed in a situation where a party with a fiduciary duty to another is unjustly enriched. Clearly, in this case Dean would be unjustly enriched if he was allowed to take title to the entire farm.

■ Dean also argues that *laches* and the statute of limitations bars this action. However, we reject these arguments as the supreme court did in *Bremer* and *Malunney v. Meade* (1977), 45 Ill. App. 3d 473, 359 N.E.2d 1091. In both cases, the date assigned by the court which commenced the running of the statute was when the loan had matured and, according to the understanding of the parties, the property was to be reconveyed. In this case, the event which triggered the running of the statute was Beard's death, when the trust organized to terminate the contingent future interests of (the issue of Beard) terminated and became distributable. This action was clearly commenced within the period of the statute of limitations. Nor do we say that *laches* is a bar, as there is no showing that Lane sat on his rights.

We, therefore, affirm the decision of the circuit court of Mercer County.

Affirmed.

BARRY and SCOTT, JJ., concur.