MILDRED ELDRIDGE, Plaintiff-Appellee, v. THELMA ELDRIDGE, Defendant-Appellant.

First District (6th Division) No. 1—92—2036

Opinion filed April 23, 1993.

Mark S. Simon, of Chicago, for appellant.

Smith, Williams & Lodge, Chartered, of Chicago (Patrick J. Cullinan, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

In this expedited appeal, defendant, Thelma Eldridge, challenges the issuance of a preliminary injunction which restrained her from exercising ownership rights pertaining to certain real property located a 4032 South Ellis in Chicago, Illinois. The court enjoined defendant from exercising any rights of ownership in the residential property, including pursuit of a forcible entry and detainer action pending against the plaintiff, Mildred Eldridge, the mother of the defendant. The preliminary injunction further restrained the defendant from exercising ownership rights in any of her personal assets, including funds held in two specifically identified bank accounts. The injunction order provided that defendant was permitted unrestricted use of only the funds held in a certain checking account.

On appeal, defendant asserts that (1) plaintiff's claim was barred by the five-year statute of limitations, (2) the grant of the preliminary injunction constituted an abuse of discretion, and (3) the trial court

exceeded its discretion by restraining the use of defendant's assets which were not in dispute between the parties.

The record reveals that the plaintiff, Mildred Eldridge, instituted this action seeking to quiet title and to impose a constructive trust upon certain residential property, the legal title to which was held by defendant, Thelma Eldridge, the adult daughter of the plaintiff. Plaintiff's complaint requested that the deed held by her daughter be declared invalid and that plaintiff be vested with title to the subject property which was located at 4032 South Ellis in Chicago, Illinois. The complaint was filed on May 19, 1992.

Concurrent with the filing of her complaint, plaintiff filed a motion for a temporary restraining order and for a permanent injunction. By this motion, plaintiff sought to enjoin her daughter from exercising any ownership rights in the subject property. In her motion, plaintiff requested that plaintiff be precluded from proceeding with any litigation relating to the property, pending a hearing on the motion for a preliminary injunction.

On May 20, 1992, the trial court entered an *ex parte* temporary restraining order precluding defendant from exercising any ownership rights in the subject property, including pursuit of the forcible entry and detainer action previously filed by defendant seeking to remove her mother from the property. The temporary restraining order provided that it was to expire on May 28, 1992.

On May 21, 1992, defendant filed a motion to dissolve the temporary restraining order which asserted, *inter alia*, that plaintiff had not established a certain and clearly ascertainable right and that she had not shown a likelihood of success on the merits because her claim was barred by the doctrine of *laches* and because it was not brought within the applicable five-year limitations period.

Upon the expiration of the temporary restraining order on May 28, 1992, the trial court scheduled a hearing on the plaintiff's request for a preliminary injunction for the following day.

When the matter was called for hearing on May 29, 1992, counsel for defendant moved to strike plaintiff's request for a preliminary injunction, arguing that the evidence before the court did not support the imposition of a constructive trust and that plaintiff's claim was barred by the statute of limitations and by the doctrine of *laches*. The trial court denied defendant's motion and proceeded with an evidentiary hearing on the request for a preliminary injunction.

The evidence adduced at the hearing on plaintiff's request for injunctive relief established that plaintiff and her children moved into the subject property on July 31, 1970. At that time, defendant was 17

years old, and her son, fathered by Marque Raspberry, was 14 months old. Defendant and her son also moved into the house with plaintiff and her other children. The purchase price of the property was $6,000. Of this amount, $3,000 was paid to the seller as a down payment, and the remaining $3,000 was to be paid under the terms of a mortgage note executed by Raspberry in favor of the property seller.

After the closing, plaintiff and her family moved into the home along with defendant and her son. Defendant moved to Wisconsin in 1971 to attend school. She later married and moved to New Jersey, and she did not return to Illinois to live until 1980. Defendant's son remained with plaintiff and was raised by her in the subject property until he left to attend college.

At the hearing, plaintiff testified that she and her family, including defendant's son, have lived in the home since 1970. At the time of the hearing, plaintiff earned about $500 per month providing child care in her home, and she testified that she would be unable to do child care if she did not live in the subject property.

Plaintiff stated that in 1970, she had been looking for larger living quarters for her family because they needed more room, and she asked Raspberry to assist her in purchasing the subject property. Plaintiff testified that she and Raspberry paid the $3,000 down payment on the purchase price. Plaintiff stated that she contributed $2,000, and Raspberry contributed $1,000 in addition to $500 in closing costs. According to plaintiff, she and Raspberry agreed that she was the actual owner of the house despite the fact that Raspberry held the title in his name, and the title to the property was put in Raspberry's name because plaintiff did not want to jeopardize her entitlement to public assistance benefits. Plaintiff testified that Raspberry had promised to transfer title to plaintiff's son after the mortgage was paid.

Plaintiff testified that she placed her trust in Raspberry because of his business experience, but acknowledged that prior to the purchase of this property, she had not had any monetary or business relationship with Raspberry.

In accordance with her agreement with Raspberry, plaintiff made the monthly payments due on the mortgage note in the amount of $91.27 until it was paid in full in July 1975. Plaintiff also paid the utility bills and paid the real estate taxes on the property until approximately 1980. In addition, plaintiff paid to have the chimney and part of the roof repaired, bought a new boiler, and had the exterior porch repaired.

According to plaintiff, Raspberry consented to assist her in the purchase of the home so that his son, who was being cared for by plaintiff, would have a place to live. Plaintiff testified that Raspberry never exercised any ownership rights in the property and never requested any rent payments from her. Plaintiff testified that in July 1975, she consulted with an attorney and had the necessary papers drafted so that Raspberry could convey title to the property to herself or to her son. Plaintiff stated that Raspberry did not appear at the scheduled meeting with her attorney and did not transfer title to the property. Plaintiff stated that Raspberry refused to transfer title to her son, in contravention of his promise to do so after the mortgage was paid in full.

Plaintiff testified that in 1980 defendant moved back into the home and lived with plaintiff and the rest of her family. At that time, she and defendant discussed the fact that they needed to obtain title to the property in order to do necessary repairs. After this discussion, they agreed that Raspberry might transfer title to defendant, who would then hold title for plaintiff. According to plaintiff, defendant agreed to acquire title to the property from Raspberry and hold it for her mother in repayment for the fact that plaintiff had taken care of her son. Plaintiff testified that at this time, she placed her trust and confidence in defendant based upon the fact that defendant was her daughter.

Plaintiff stated that defendant lived in the house with her until February 1992 and has never demanded rent payments from her. According to plaintiff, she understood that she was the actual owner of the house even after Raspberry had transferred title to the defendant. Plaintiff testified that in March 1992, after defendant moved out of the house, she received a notice of eviction which stated that she was to vacate the premises by April 30, 1992.

Raspberry testified that even though he never lived in the home and did not have a key, he purchased the home so that his son and the defendant would have a suitable place to live. Raspberry denied that plaintiff had contributed toward the down payment. Raspberry acknowledged that he and plaintiff agreed that she was to make the monthly mortgage payments in lieu of rent, but he denied that the property was to belong to her. Raspberry also specifically denied that he had ever agreed to transfer title to the property to plaintiff or to her son and further denied that plaintiff or her son ever requested that he transfer title to either of them.

Defendant denied that she ever had a close relationship with her mother and specifically denied that she had agreed to hold the title to

the property for her mother. Defendant stated that she moved back into the subject property in 1980 because her son was living there. Defendant testified that the home was in need of various repairs, and Raspberry agreed to convey title to her so she could obtain a loan to finance the repairs which Raspberry could not afford.

Defendant obtained a warranty deed from Raspberry in October 1980. After Raspberry conveyed title to her, defendant assumed responsibility for the tax liability on the property. Defendant also mortgaged the property and used the proceeds of those loans to make improvements and necessary repairs to the home. Defendant originally obtained a loan in the amount of $35,000, which she subsequently refinanced in the amount of $72,000. At the hearing, defendant testified to making specific repairs and improvements which cost in excess of $50,000. Defendant acknowledged that she used a portion of the mortgage proceeds to pay personal bills. Defendant also testified that she had made the mortgage payments since approximately 1982, and at the time of the hearing, those payments were in the amount of $709. During the 12-year period from 1980 to 1992, plaintiff continued to live in the home and paid only the utility bills but never paid any rent to defendant.

Defendant stated that in February 1992, she left the house because she could not get along with her mother and because she felt threatened. In March 1992, defendant notified plaintiff of her intent to evict her mother from the property. Plaintiff's complaint and motion for injunctive relief were filed on May 19, 1992.

We initially consider whether the trial court abused its discretion in granting the preliminary injunction.

■ A preliminary injunction may issue where the petitioner has established (1) a certain and clearly ascertainable right in need of protection, (2) irreparable injury without injunctive relief, (3) an absence of adequate legal remedies, and (4) a likelihood of success on the merits. (*Decker, Berta & Co. v. Berta* (1992), 225 Ill. App. 3d 24, 27, 587 N.E.2d 190; *Fischer v. Brombolich* (1991), 207 Ill. App. 3d 1053, 1063, 566 N.E.2d 785.) A showing that she is likely to succeed on the merits does not require the petitioner to make out a case that will in all events warrant relief on the merits. Rather, she must only raise a fair question as to the existence of the right claimed and that she will be entitled to the relief prayed for if the proof should sustain her allegations. *Fischer*, 207 Ill. App. 3d at 1066; *Tierney v. Village of Schaumburg* (1989), 182 Ill. App. 3d 1055, 1061, 538 N.E.2d 904.

The purpose of a preliminary injunction is to preserve the status quo, which is the last peaceable and uncontested status preceding the

pending controversy. (*Wilson v. Wilson* (1991), 217 Ill. App. 3d 844, 849, 577 N.E.2d 1323; *Fischer*, 207 Ill. App. 3d at 1064; *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 502, 422 N.E.2d 1166.) In deciding whether to grant a motion for a preliminary injunction, the trial court must balance the equities and relative inconvenience to the parties and determine whether a greater burden will be imposed on the defendant by granting the motion than on the plaintiff by denying it. (*Decker, Berta & Co.*, 225 Ill. App. 3d at 27.) Because the issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion, a court of review should confine itself to a determination of whether the trial court has properly exercised its broad discretionary powers, and each substantive issue should be considered only to the extent necessary to determine whether the trial court abused its discretion. *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 791, 514 N.E.2d 45.

Upon examination of the record in light of the requirements set forth above, we find that the trial court did not abuse its discretion in granting the injunctive relief requested by the plaintiff.

■ A constructive trust is raised by operation of law and is created when a court finds that the party in possession of wrongfully acquired property is the constructive trustee of the property because it would be inequitable for that party to retain possession of the property. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193, 533 N.E.2d 901.) Imposition of a constructive trust is justified where (1) actual or constructive fraud is considered as equitable grounds for raising the trust, (2) there is a fiduciary duty and a subsequent breach of that duty, or (3) duress, coercion or mistake is present. *Suttles*, 126 Ill. 2d at 193.

A confidential or fiduciary relationship exists where one party reposes special trust and confidence in another who accepts that trust and confidence and thereby gains superiority and influence over the subservient party. (*Chicago Land Clearance Comm'n v. Yablong* (1960), 20 Ill. 2d 204, 207, 170 N.E.2d 145; *Klass v. Hallas* (1959), 16 Ill. 2d 161, 164, 157 N.E.2d 261.) It encompasses both technical fiduciary relations and those informal relations which exist whenever one person trusts in and relies upon another. (*Klass*, 16 Ill. 2d at 164.) This type of relationship includes not only the legal and technical relations such as guardian and ward, attorney and client, or principal and agent, but also extends to relations which may be moral, social, domestic or merely personal. *Klass*, 16 Ill. 2d at 164.

■ Factors to be considered in the determination of whether a fiduciary relationship exists include the degree of kinship, if any, dis-

parity in age, health, mental condition, education and business experience, the extent to which the allegedly servient party entrusted his business or financial affairs to the other and the degree of trust and confidence placed in the dominant party. (*McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499, 134 N.E.2d 789; *Kester v. Crilly* (1950), 405 Ill. 425, 432, 91 N.E.2d 419; *Malunney v. Meade* (1977), 45 Ill. App. 3d 473, 476, 359 N.E.2d 1091.) A close familial relationship and normal love, affection, and trust are not themselves sufficient to establish a fiduciary relationship. *Chicago Land Clearance Comm'n*, 20 Ill. 2d at 207; *Klass*, 16 Ill. 2d at 164; *Bremer v. Bremer* (1952), 411 Ill. 454, 465, 104 N.E.2d 299.

■ Plaintiff's motion for injunctive relief alleged that she had a fiduciary and confidential relationship with Raspberry and with the defendant. Plaintiff testified that she placed her trust and confidence in Raspberry because of his superior business experience and that she placed her trust and confidence in the defendant based upon their close relationship as mother and daughter.

Plaintiff also testified that when she asked Raspberry to assist her in purchasing the subject property, he added $1,500 to plaintiff's $2,000 toward the down payment because he wanted his son, who was being cared for by plaintiff, to have a suitable place to live. Plaintiff's testimony indicated further that she and Raspberry agreed that she was the actual owner of the house despite the fact that Raspberry held the title in his name and that Raspberry subsequently refused to follow through on his promise to transfer title to plaintiff's son after the mortgage was paid. It was undisputed that plaintiff made the monthly payments due on the mortgage note until it was paid in full. In addition, plaintiff paid the utility bills, paid the real estate taxes on the property until approximately 1980, and paid for certain repairs to the property. Plaintiff testified that Raspberry never exercised any ownership rights in the property and never requested any rent payments from her.

Plaintiff testified further that defendant agreed to acquire title to the property from Raspberry and hold it for her mother in repayment for the fact that plaintiff had taken care of her son. Plaintiff stated that defendant lived in the house with her until February 1992 and has never demanded rent payments from her. According to plaintiff, she understood that she was the actual owner of the house even after Raspberry had transferred title to the defendant.

The trial court found the testimony of the plaintiff credible and, in balancing the equities and relative inconvenience to the parties, determined that no greater burden would be imposed on the defendant by

granting the motion than on the plaintiff by denying it. (See *Decker, Berta & Co.*, 225 Ill. App. 3d at 27.) Because the plaintiff presented sufficient evidence to raise a fair question as to her right in the property and the imposition of a constructive trust, we find that the trial court did not abuse its discretion in granting the preliminary injunction.

In addition, plaintiff testified that she and her family, including defendant's son, have lived in the home since 1970. At the time of the hearing, plaintiff earned about $500 per month providing child care in her home, and she testified that she would be unable to do child care if she did not live in the subject property. Plaintiff's residence and provision of child care in the home was the last peaceable and uncontested status preceding the pending controversy, and the grant of the preliminary injunction was proper to preserve the status quo. *Fischer*, 207 Ill. App. 3d at 1064.

We next consider defendant's claim that the trial court exceeded its discretion by restraining the use of defendant's assets which were not in dispute between the parties.

Plaintiff's request for injunctive relief sought only to enjoin defendant from exercising any rights of ownership, including the right to convey the property and the right to pursue the forcible entry and detainer action then pending against the plaintiff. In addition to this relief, the preliminary injunction entered by the court precluded defendant from exercising any ownership rights in all of her personal property, including funds held by her in two specified bank accounts.

Review of the record reveals that plaintiff never made any request for an accounting of the mortgage proceeds obtained by defendant, and plaintiff never sought any restriction on defendant's use of funds held in her personal bank accounts. By including these restrictions in the injunction order, the trial court went far beyond the relief requested and exceeded the scope of the hearing on plaintiff's motion.

The issues in the case are created by the allegations in the pleadings, to which proof must correspond, and a party cannot obtain relief based upon proof without allegations. (*Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 534, 580 N.E.2d 1198.) Considering the record before the court, we believe that the trial court's restriction of defendant's use of her personal property and the funds in the specified bank accounts constituted relief which was beyond that requested and which was not supported by the pleadings or the proof presented. We hold, therefore, that the trial court exceeded its discretion in granting such relief. Consequently, we va-

cate that portion of the order which restricted defendant's use of the funds held in the two specified bank accounts.

Finally, we address defendant's assertion that the plaintiff's claim was barred because it was not brought within the five-year period of limitations.

It is established that actions which seek the imposition of constructive trusts are subject to the operation of the five-year statute of limitations. (*David v. Russo* (1980), 91 Ill. App. 3d 1023, 1028, 415 N.E.2d 531; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 887, 374 N.E.2d 670; Ill. Rev. Stat. 1991, ch. 110, par. 13—205.) The precise date of plaintiff's discovery of her cause of action is ordinarily a question of fact and must be determined by the trier of fact. *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 153-54, 485 N.E.2d 1076; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416-17, 430 N.E.2d 976.

■ The scope of our review is confined to a determination of whether the trial court abused its discretion in granting the preliminary injunction (*A.B. Dick Co.*, 159 Ill. App. 3d at 791), and our holding that there was no abuse of discretion is not a determination on the merits of the case (*Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 151, 358 N.E.2d 61). Thus, it is the obligation of the trial court to decide, as a matter of fact, when the plaintiff became aware of her claim for a constructive trust and whether she asserted that claim within the five-year period of limitations.

For the foregoing reasons, we affirm that portion of the order enjoining defendant from exercising ownership rights in the subject property, vacate the portion of the order restricting defendant's use of the funds held in her personal bank accounts, and remand the cause to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

Affirmed in part; vacated in part and remanded.

McNAMARA, P.J., and EGAN, J., concur.