2023 IL App (1st) 221098-U
Order filed: February 23, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1098

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KATHERINE SEABERRY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 CH 05420 |
| | ) | |
| KEVIN GREENLAW, and SERVION, INC., f/k/a C.U. | ) | Honorable |
| Mortgage Service, Inc., a Minnesota corporation, | ) | Carolyn K. Moreland, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Partial summary judgment entered in favor of defendants is affirmed, where the evidence was insufficient to create a genuine issue of material fact with respect to plaintiff's claims seeking to quiet title, rescission of a deed, and recovery for fraudulent misrepresentation

¶ 2    Plaintiff-appellant, Katherine Seaberry, appeals from an order entering partial summary judgment in favor of defendants, Kevin Greenlaw and Servion, Inc., f/k/a C.U. Mortgage Service, Inc., a Minnesota corporation (Servion), with respect to her claims seeking to quiet title, rescission of a deed, and recovery for fraudulent misrepresentation with respect to the sale of her home. For the following reason, we affirm.

¶ 3　Plaintiff initiated this lawsuit in August 2021, when she filed a complaint against defendants containing five counts: (I) Quiet Title, (II) Rescission, (III) Financial Exploitation of an Elderly Person in Violation of 720 ILCS 5/17-56 (2020), (IV) Fraudulent Misrepresentation, and (V) Unjust Enrichment. Therein, plaintiff generally alleged that she was 91-years old and resided in the upper unit of a two-unit building located on the 9100 block of South Laflin Street in Chicago, Illinois. Plaintiff had lived there since 1970, when she and her late husband purchased the property. Plaintiff became the sole owner of the property when her husband died, but in 2017 plaintiff "began to worry that she would lose the property, which she wanted to keep in the family."

¶ 4　Greenlaw is plaintiff's great-nephew. Believing that he was helping her to "age in place," plaintiff entered into a transaction with Greenlaw on June 21, 2017, by which plaintiff believed she could "stay in her home for the remainder of her life and keep the house in the family." However, plaintiff allegedly did not understand the documents she signed that day and did not understand that she had actually sold the property to Greenlaw for far less than it was worth. Plaintiff alleged that she did not learn that she had sold the property until she inquired about her property taxes in 2018.

¶ 5　With respect to that June 21, 2017, transaction, the complaint more specifically alleged that on that day Greenlaw drove plaintiff to an office to sign documents. Those documents included a Warranty Deed transferring the property to Greenlaw and an ALTA Settlement Statement summarizing the transaction. The deed was drafted by Greenlaw's attorney, Kathleen Creswell Cunningham, someone plaintiff did not retain and had never met before. In addition, on that day Greenlaw signed an Installment Note in favor of plaintiff. That document was also prepared by Cunningham. Copies of these and other documents were attached to the complaint.

¶ 6　According to the complaint and those documents, the transaction was structured as follows.

The purchase price of the property was $65,000, with approximately $30,000 paid at closing to satisfy an existing mortgage on the property. The remaining $35,000 of the purchase price was to be paid pursuant to the installment note, according to which Greenlaw promised to pay plaintiff $35,000 at no interest. The first $5,000 was to be paid within one week of the closing, and the remaining $30,000 was to be paid to plaintiff by: (1) allowing her to live in the property rent-free for 25 months, with $600 per month applied toward the principal amount due for each month plaintiff lived on the property, and (2) allowing plaintiff to collect rent in the amount of $600 per month from the tenant in the other unit, and to retain that rent as additional payment toward the principal amount remaining due. These payments were to run from July 1, 2017, to August 1, 2019.

¶ 7 However, the complaint alleged that plaintiff never received the initial $5,000 payment and never collected any rent from the tenant. While plaintiff did receive multiple $1,300 payments from Greenlaw beginning in July 2017, as well as a $12,500 payment in February 2018, those payments only totaled $22,800. Therefore, plaintiff only received a total of $52,800 from Greenlaw for the property, a property that the Cook County Assessor's Office had estimated to be worth $170,920 as of January 1, 2017, and $190,240 as of January 1, 2018.

¶ 8 On January 30, 2018, Greenlaw borrowed $110,000, securing the loan by executing a promissory note and mortgage on the property in favor of Credit Union 1. Credit Union 1 subsequently assigned its interests in the loan to C.U. Mortgage Service, Inc., now known as Servion.

¶ 9 Between May 2019 and March 2020, plaintiff received multiple letters from Greenlaw demanding that she pay $500 per month in rent and pay $7,200 in late rent. These letters indicate that when plaintiff raised the issue of the sale and the difference between the purchase price and the appraised value of the property, and plaintiff demanded an additional $20,000 in payment,

Greenlaw offered to allow plaintiff a year of free rent as an offset. The efforts of plaintiff's attorneys to negotiate a solution that would allow plaintiff to remain living at the property proved unsuccessful, and Greenlaw listed the property for sale in August 2020, at a price of $160,000.

¶ 10    Based on these facts, the complaint alleged that the transaction was inequitable and was the result of undue influence, financial exploitation of an elderly person, and fraudulent misrepresentation. The complaint also asserted that the transaction resulted in inadequate consideration being paid to plaintiff and in Greenlaw being unjustly enriched. Therefore, pursuant to the five counts noted above, the complaint sought an order quieting title and rescission of the deed in favor of plaintiff, as well as statutory and monetary damages.

¶ 11    Greenlaw and Servion filed answers to the complaint, as well as affirmative defenses, with Greenlaw representing himself *pro se* for the vast majority of the proceedings below. For his part, Greenlaw's affirmative defenses asserted that Cunningham asked plaintiff numerous times at closing if she understood the process, the $5,000 first installment called for in the installment note was paid, plaintiff was never told she could live in the property rent-free for life, and neither plaintiff nor her attorney made attempts to rectify the disputes between her and Greenlaw. Servion's affirmative defenses included a contention that because it was a *bona fide* mortgagee that had acted in good faith and without knowledge of any interest plaintiff purportedly had in the property, its interest in the property should be protected and deemed a first-priority lien.

¶ 12    In addition, Greenlaw filed a counterclaim against plaintiff alleging that she had failed to pay rent for three years, had defamed Greenlaw's character to family members and others by claiming that he was trying to steal the property or evict her, and had caused Greenlaw to lose the tenant renting the other unit in the property. Greenlaw asked for $25,000 in damages and/or for plaintiff to vacate the property.

¶ 13    The parties then engaged in discovery, which included taking the depositions of plaintiff, Greenlaw, and Cunningham. Servion thereafter filed a motion for summary judgment as to counts I, II, and IV of the complaint. Plaintiff filed a response to this motion, as well as a cross-motion for summary judgment on Servion's affirmative defense that it was a *bona fide* mortgagee with a first-priority lien. In its reply, Servion contended that plaintiff's cross-motion for summary judgment on its affirmative defense was premature and should be denied. There is no written response to the cross-motion for summary judgment in the record from Greenlaw. Finally, Seaberry filed a motion to consolidate this matter with a pending foreclosure suit Servion had filed against her and Greenlaw with respect to the property.

¶ 14    On January 6, 2022, the circuit court entered an oral ruling granting summary judgment in favor of Servion and Greenlaw on Counts I, II, and IV of the complaint. The circuit court concluded that there was no genuine issue of material fact with respect to plaintiff's inability to prove the elements necessary to support her claims, where the evidence established that she could not remember her conversations with Greenlaw or anything specific about the closing, there was no evidence of any misstatements of fact made by Greenlaw, and no evidence of undue influence. The circuit court also struck Greenlaw's counterclaim without leave to replead. A written order reflecting these rulings was entered on July 11, 2022, and the following day a written order was entered reflecting that the motion to consolidate this matter with the foreclosure suit was withdrawn.

¶ 15    On July 14, 2022, the circuit court entered an order granting plaintiff's motion to voluntarily dismiss the remaining counts of the complaint. Plaintiff filed her notice of appeal on July 26, 2022. While Servion has filed an appearance and response brief with this court, Greenlaw has not appeared or otherwise participated in this appeal.

¶ 16    Summary judgment is proper when the pleadings, depositions and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). "The purpose of summary judgment is not to answer a question of fact, but to determine whether one exists." *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 18. A genuine issue of material fact exists "where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. In determining whether a question of material fact exists, the reviewing court must construe the materials of record strictly against the movant and liberally in favor of the nonmoving party. *Id.* Although a drastic means of disposing of litigation, summary judgment remains an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 17    A plaintiff is not required to prove her case in response to a motion for summary judgment, but must present evidentiary facts to support the elements of the cause of action. *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 885 (2009). More specifically, a "defendant moving for summary judgment bears the initial burden of production." *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). A defendant may satisfy this burden of production in one of two ways: "(1) by affirmatively showing that some element of the case must be resolved in his favor, [citation]; or (2) by establishing 'that there is an absence of evidence to support the nonmoving party's case.' " *Id*. When a defendant has met this initial burden, the burden shifts to the plaintiff "to present a factual basis which would arguably entitle her to a favorable judgment." *Id*.

¶ 18    An order granting a motion for summary judgment is subject to a *de novo* standard of review. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). This court

may, therefore, affirm the judgment of the circuit court on any basis that appears in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Retirement Plan for Chicago Transit Authority Employees v. Chicago Transit Authority*, 2020 IL App (1st) 182510, ¶ 34.

¶ 19    Because plaintiff's assertions of fraud underly many of her arguments on appeal, we begin by addressing Count IV of her complaint which alleged fraudulent misrepresentation. As this court has summarized:

> "To sufficiently plead a cause of action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) a false statement of material fact, (2) defendant's knowledge or belief that the statement was false, (3) defendant's intent that the statement induce the plaintiff to act, (4) plaintiff's justifiable reliance upon the truth of the statement, and (5) plaintiff's damages resulting from reliance on the statement. [Citation.] These elements must be pled with particularity, specificity, and certainty. [Citation.]
>
> A plaintiff has the burden of proving each element of fraud by clear and convincing evidence. [Citation.] 'If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper.' [Citation.]" *Findlay v. Chicago Title Insurance Co.*, 2022 IL App (1st) 210889, ¶¶ 79-80.

¶ 20    Our supreme court has recognized that "a motion for a directed verdict or summary judgment 'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.' " *Reed v. Northwestern Publishing Co.*, 124 Ill. 2d 495, 512 (1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Thus, because of the heightened standard at issue here, "in order to withstand a summary judgment motion a plaintiff must present evidence such that a reasonable trier of fact could find that [plaintiff] had established the requisite

fault by the clear and convincing evidence standard." *Kessler v. Zekman*, 250 Ill. App. 3d 172, 190 (1993). To prove something by clear and convincing evidence, a plaintiff must 'leave[ ] no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question.' " [Citation.] Clear and convincing evidence is considered 'to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." [Citation.]" *Metropolitan Capital Bank & Trust v. Feiner*, 2020 IL App (1st) 190895, ¶ 39.

¶ 21    With respect to the first element of a cause of action for fraudulent misrepresentation, Count IV of the complaint alleged a single purportedly false statement of material fact: Greenlaw purportedly told plaintiff that "by signing documents she would keep the house in the family and be able to remain in her home." There is scant, if any, evidence that Greenlaw made this specific statement.

¶ 22    In her deposition, Cunningham made it clear that she had no independent recollection of the transaction or the closing, or anything specific that was said by plaintiff or Greenlaw. For her part, plaintiff stated very clearly in her deposition that she never intended to sell the property to Greenlaw and that her concern was simply "keeping the house in the family."[1] However, when asked about her conversations with Greenlaw and what he told her or explained to her about the transaction, plaintiff repeatedly stated "I don't know" and indicated: "Me, a senior citizen, you lose your mind sometime, you have no idea what you did." Plaintiff also specifically stated that there was nothing that would refresh her recollection as to the conversations she had with Greenlaw about the sale of the property. And, in her answers to interrogatories, plaintiff stated: "Ms. Seaberry does not know why she signed the paperwork. She did not know she was selling the property. In

---

[1] Nevertheless, plaintiff did admit that she had previously discussed selling the property to her brother in 2017.

her own words, her mind completely left her. She believed that she was keeping the house in the family."

¶ 23    Thus, on appeal plaintiff relies upon purported admissions made by Greenlaw at his deposition to show that he made a false statement of material fact. Plaintiff first claims that Greenlaw admittedly "knew that Seaberry wanted to stay in her home for the remainder of her life and that she merely wanted to keep the home in the family." Notably, this does not exactly match what was specifically alleged in the complaint, which was that Greenlaw told plaintiff she would "be able to remain in her home." Plaintiff repeatedly switches between these two alternatives throughout her briefs. Moreover, even if true this simply goes to what Greenlaw purportedly *knew*, not to anything that he actually *said*.

¶ 24    Moreover, the record does not support the contention that Greenlaw was fully aware of these desires, as when Greenlaw was asked about plaintiff's purportedly expressed intention to "keep the property in the family," he responded: "She didn't necessarily say keep it in the family. Her words, verbatim, was she wanted to have a place—that was always the place for family to come and congregate. She said she always—so she just want to keep in—she say she want to keep it so the family can come over and congregate. That was the conversation." And again, none of this is evidence of anything Greenlaw actually said to plaintiff.

¶ 25    Nor does the record support plaintiff's contention that Greenlaw specifically told plaintiff she could live in the property "for the remainder of her life." Rather, in response to a question about the reasonableness of the $65,000 purchase price, Greenlaw stated: "I told Aunt Katherine, my only pretense is whatever you be doing over here, continue to do. All I want to make sure is the mortgage is paid and the repairs is done. That's it."

¶ 26    We recognize that in determining whether a question of material fact exists, we must

construe the materials of record strictly against defendants and liberally in favor of plaintiff. *Mashal*, 2012 IL 112341, ¶ 49. Still, it must also be remembered that plaintiff's allegations of fraud must be pled with particularity, specificity, and certainty, and ultimately must be proven by clear and convincing evidence. *Findlay*, 2022 IL App (1st) 210889, ¶¶ 79-80. Furthermore, "in order to withstand a summary judgment motion a plaintiff must present evidence such that a reasonable trier of fact could find that [plaintiff] had established the requisite fault by the clear and convincing evidence standard." *Kessler*, 250 Ill. App. 3d 190. Given the context of the question asked and the nature of Greenlaw's response, we do not find that this colloquy meets this standard and sufficiently shows that Greenlaw affirmatively told plaintiff she could live in the property for the remainder of her life. At most, it is evidence of a portion of what was actually plead in the complaint—that Greenlaw told plaintiff she would "be able to remain in her home."

¶ 27 Moreover, even if we did conclude that there was sufficient evidence that Greenlaw told plaintiff—as was plead in the complaint—that by "signing documents she would keep the house in the family and be able to remain in her home," plaintiff herself concedes that any such statement was "technically true." Indeed, the record clearly reflects that the property was sold to a family member and plaintiff has continued to live there.

¶ 28 Plaintiff is therefore left to rely upon authority holding that a " 'statement which is technically true as far as it goes may nevertheless be fraudulent, where it is misleading because it does not state matters which materially qualify the statement as made.' " *Kleczek v. Jorgensen*, 328 Ill. App. 3d 1012, 1020 (2002) (quoting *St. Joseph Hospital v. Corbetta Construction Co.,* 21 Ill. App. 3d 925, 952-53 (1974)). Pursuant to this authority, plaintiff claims that she was defrauded when Greenlaw "intentionally concealed the facts that the purchase price was less than half the home's market value and that she would have to pay rent."

¶ 29     First, as we noted above the complaint alleged a single, specific false statement of material fact: Greenlaw allegedly told plaintiff "that by signing documents she would keep the house in the family and be able to remain in her home." There were no allegations regarding Greenlaw misleading plaintiff by his failure to tell her about the value of the property or that rent would have to be paid in the future, and plaintiff never sought to amend her complaint to add such allegations.

¶ 30     "[A] response to a motion for summary judgment is not the proper vehicle to assert new factual allegations that should have been included in the underlying complaint. 'When ruling on a motion for summary judgment, the trial court looks to the pleadings to determine the issues in controversy. [Citation.] If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint.' " *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 55 (quoting *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008)). Thus, it is improper for plaintiff to rely on these arguments here. Moreover, even if we were to consider these contentions, we would find them without merit.

¶ 31     As to the value of the property, plaintiff relies upon the discrepancy between the $65,000 paid for the property in June 2017 and: (1) the $170,920 and $190,240 values placed upon the property by the Cook County Assessor's Office in 2017 and 2018, (2) the $110,000 mortgage Greenlaw took out on the property in January 2018, and (3) the $120,000 value Greenlaw himself placed on the property in his deposition. We disagree that these purported discrepancies support plaintiff's contention that Greenlaw omitted materially qualifying information.

¶ 32     While defendant contends that Greenlaw intentionally concealed the true value of the property, "a party cannot fraudulently conceal information that it does not know." *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 28 (citing *Stewart v. Thrasher,* 242 Ill. App. 3d 10, 16 (1993). Here, Greenlaw specifically testified that he

did no independent research before buying the property, but that he felt the purchase price was reasonable because the property "needed a lot of work."

¶ 33     Furthermore, plaintiff cites to no evidence in the record that Greenlaw was ever aware of the values placed on the property by the assessor. Greenlaw also presented unrebutted testimony that he himself was surprised when he was allowed to borrow $110,000 against the property. With respect to the conversation between himself and the loan officer, Greenlaw testified: "I wasn't even going for 110. I just wanted my 65,000 back. She said you can go up to 80 percent of the [value of the property], which was 110. I said, oh, I can get that much? She was like, yes, 80 percent. Okay, let's go for it." Finally, while Greenlaw did express an opinion that the property was worth $120,000, that was at the time of his deposition in May 2022. Greenlaw was not asked to and did not opine as to his opinion of the value of the home at the time of the transaction in June 2017, aside from expressing his opinion that the $65,000 purchase price was reasonable considering the condition of the property.

¶ 34     With respect to Greenlaw's purported concealment of the fact that rent would have to be paid in the future, "[p]romissory fraud, or a promise of future intent or conduct, is generally not actionable in Illinois; that is, misrepresentations alleged in a fraud claim must be of preexisting or present facts." *Dvorkin v. Soderquist*, 2022 IL App (1st) 201368, ¶ 88; *Abazari*, 2015 IL App (2d) 140952, ¶ 28 (same); see also, *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 41 ("assurances as to future events are generally not considered misrepresentations of fact").

¶ 35     Plaintiff acknowledges this authority, but nevertheless contends that Greenlaw's failure to inform her that rent would have to be paid in the future constituted a misrepresentation not of future events but of the contents of the documents signed at the June 2017 transaction. However, nothing in those documents requires plaintiff to pay future rent. The installment note simply

indicates that plaintiff would be allowed to live at the property rent-free for 25 months while Greenlaw repaid the loan. It is silent on plaintiff's obligation to pay future rent, or in what amount.

¶ 36    In sum, there is insufficient evidence that Greenlaw made the sole statement alleged in the complaint to be a fraudulent misrepresentation. Even if there was, plaintiff herself concedes that the statement is in fact "technically true." Finally, plaintiff's alternative argument that Greenlaw nevertheless concealed material information was not properly plead in the complaint, nor does it have any legal or factual merit. For these reasons, we conclude that the circuit court did not err in granting summary judgment in favor of defendants on Count IV of the complaint. *Findlay*, 2022 IL App (1st) 210889, ¶¶ 79-80 (summary judgment for a defendant is proper where a plaintiff fails to establish any element of the cause of action).

¶ 37    We now turn to the quiet title claim contained in Count I of the complaint. An action to quiet title to property is an equitable proceeding in which a party seeks to remove a cloud on her title to the property. *Stahelin v. Forest Preserve District of Du Page County,* 376 Ill. App. 3d 765, 315 (2007). A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is unfounded or which would be inequitable to enforce. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). On appeal, plaintiff solely contends that there is sufficient evidence that it would be inequitable to enforce Greenlaw's title to the property based on his fraudulent misrepresentations. We disagree.

¶ 38    To begin with, the allegations of fraudulent misrepresentation contained in plaintiff's complaint were not incorporated into Count I. Moreover, we reiterate that the allegations regarding Greenlaw misleading plaintiff by his failure to tell her about the value of the property or that rent would have to be paid in the future were not plead in the complaint *at all*. Even if they were, we have already concluded that plaintiff's assertions of fraudulent misrepresentation are insufficient

to survive the motion for summary judgment. For these reasons, we conclude that the circuit court did not err in granting summary judgment in favor of defendants on Count I of the complaint.

¶ 39    Finally, we address the claim for rescission contained in Count II. "Rescission is an equitable remedy. A party seeking rescission must restore the other party to the status quo before the contract took place. [Citations.] Restoration of the status quo requires the rescinding party to return any consideration it received from the other party under the contract." *23-25 Building. Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 757 (2008). Here, plaintiff contends that there is sufficient evidence that the deed transferring the property to Greenlaw should be rescinded due to fraud, undue influence, and inadequate consideration. We disagree.

¶ 40    As an initial matter, courts will generally "not grant rescission of a contract where the status quo *ante* cannot be restored." *Newton v. Aitken*, 260 Ill. App. 3d 717, 719 (1994). Plaintiff contends "the parties may be returned to the status quo by reverting title to Ms. Seaberry, awarding an equitable mortgage of $52,800 to Greenlaw, and recognizing Servion's contractual right of payment from Greenlaw of the $110,000 promissory note." We fail to see how this restores the status quo. Under such a scenario, Greenlaw would only have an equitable mortgage, not the $52,800 he actually paid to plaintiff. And Servion would not be returned the $110,000 it loaned to Greenlaw, and would only have recourse for Greenlaw's non-payment via the promissory note and not via the mortgage on the property.

¶ 41    That matter aside, to the extent plaintiff relies on her assertions of fraud to support her claim for rescission we reject those arguments for the same reasons discussed above. Her assertions of fraud are insufficient to survive the motion for summary judgment.

¶ 42    As to her claims of undue influence, plaintiff contends that Greenlaw violated a fiduciary relationship he had with plaintiff with respect to the transaction. To support this assertion, plaintiff

cites to evidence in the record suggesting that she had a very close relationship with Greenlaw's father, Bernard, and that plaintiff relied on and placed significant trust in Bernard in various aspects of her life. Noting that it was Bernard who suggested that Greenlaw might be able to assist plaintiff with respect to the property, plaintiff contends that the fiduciary relationship she had with Bernard was "imputed" to Greenlaw.

¶ 43     However, the law is clear that a "close familial relationship and normal love, affection, and trust are not themselves sufficient to establish a fiduciary relationship. *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 890 (1993). Moreover, even if we were to conclude that Bernard had some form of fiduciary relationship with plaintiff, she cites to no authority to support her contention that such a relationship should be "imputed" to Greenlaw. And in any case, the record belies any such relationship. Plaintiff and Greenlaw both testified that they did not have the same type of close, trusting relationship. Indeed, when specifically asked whether she placed trust in Greenlaw in 2017, plaintiff responded clearly: "No." While plaintiff notes a recognized exception whereby undue influence can be based upon fraud even in the absence of a fiduciary relationship, we note again that plaintiff's claims of fraud are insufficient to withstand summary judgment.

¶ 44     Plaintiff lastly bases her claim for rescission on the purportedly inadequate consideration she received for the property. However, and as even plaintiff recognizes, "[i]n the absence of a showing of fraud, mere inadequacy of consideration is not grounds for equitable relief." *Johnson v. Fulkerson*, 12 Ill. 2d 69, 74 (1957). Plaintiff therefore specifically contends that it is the combination of inadequate consideration and fraud that support this claim. Once again, this argument is untenable considering that plaintiff's claims of fraud are insufficient to withstand summary judgment. We therefore conclude that the circuit court did not err in granting summary judgment in favor of defendants on Count II of the complaint.

¶ 45    Because we conclude that summary judgment was properly granted in favor of the defendants on Counts I, II and IV in the first instance, we also conclude that the circuit court both properly declined to further address and properly denied plaintiff's cross-motion as to Servion's affirmative defense it was a *bona fide* mortgagee.

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 47    Affirmed.